Beckwith, Associate Judge,
dissenting in part'
The majority rejects Gilberto Lopez-Ramirez’s contention that the Victims of Violent Crime Compensation Act (WCCA) assessment[1] is a “fine or penalty” for the purposes of the jury-trial statute, D.C. Code § 16-705, on the ground that Mr. Ramirez’s “interpretation would produce a result wholly at odds with the intent of the Misdemeanor Streamlining Act.”[2] Ante at 174. But by deviating from the ordinary commonsense understanding of the . terms “fine” and “penalty” — an understanding that encompasses .a fee like the WCCA assessment that was automatically imposed following conviction in an amount *178 proportional to the severity of the offense — the majority’s interpretation produces a result “wholly at odds” with the intent of the jury-trial statute: it deprives defendants facing fines above the statutorily specified threshold of their right to a jury trial. Because there is no nonspecula-tive basis for us to prioritize the legislative purpose of the Misdemeanor Streamlining Act over that of the jury-trial statute, we should apply the statutes as written, construe their words “according to their ordinary sense and with the meaning commonly attributed to them,”[3] and conclude that the WCCA assessment is a “Fine or penalty.”
I. The WCCA Assessment Is a “Fine” or “Penalty” Under § 16-705.
The text of the jury-trial statute, D.C. Code § 16-705, reflects the intent of the D.C. Council (and of Congress[4]) that misdemeanor defendants facing monetary Fines and penalties above a certain threshold should receive a jury trial. In its current form, the statute provides that a defendant “charged with an offense which is punishable by a Fine or penalty of more than $1,000” or “charged with 2 or more offenses which are punishable by a cumulative fine or penalty of more than $4,000” is entitled to a jury trial. D.C. Code § 16-705(b)(1). The Act’s long title — in relevant part, “AN ACT to amend section 16-705 ... to require that trials be jury demanda-ble where a defendant charged with more than one offense is exposed to a cumulative maximum fíne of more than $4,000 or a cumulative maximum term of imprisonment of more than 2 years” — reflects the D.C. Council’s desire to expand the right to a jury trial in cases involving substantial fines or penalties, Id.
Because “fíne” and “penalty” are not defined in the jury-trial statute, and because they do not seem to be terms of art, this court will typically “accord them their ordinary meaning in common usage.” Hood v. United States, 28 A.3d 553, 559 (D.C. 2011). In common usage, the term “fíne” refers to “a sum ... imposed as punishment for a crime.” Webster’s Third New International Dictionary 852 (2002); see also Black’s Law Dictionary 750 (10th ed. 2014) (defining “fine” as “[a] .pecuniary criminal punishment or civil penalty payable to the public treasury”). The term “penalty” means “the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense.” Webster’s Third New International Dictionary 1668; see also Black’s Law Dictionary 1313 (defining “penalty” as “[pjunishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment”).
Both fines and penalties are ordinarily understood to be forms of punishment. A punishment is “[a] sanction — such as a fíne, penalty, conftfiement, or loss of property, right, or privilege — assessed against a person who has violated the law.” Black’s *179 Law Dictionary 1428. Typical criteria indicating that a monetary fee or assessment is a punishment are: (1) it “places an additional burden or penalty upon the defendant”; (2) it “can be imposed only following conviction of a crime”; (8) “the assessment [is] higher ... for more serious crimes,” reflecting a “punitive objective”; and (4) the fee is “collected in the same way that fines are collected.” United States v. Mayberry, 774 F.2d 1018, 1021 (10th Cir. 1985); accord. United States v. King, 824 F.2d 313, 316-17 (4th Cir. 1987); United States v. Smith, 818 F.2d 687, 689-90 (9th Cir. 1987);[5] see also United States v. Bajakajian, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (holding that forfeiture under a certain statute constituted punishment because “[t]he statute directs a court to order forfeiture as an additional sanction when ‘imposing sentence on a person convicted of a willful violation”).
The WCCA, originally enacted in 1982 and substantially revised in 1996,[6] provides for an “assessment”[7] to be imposed on defendants “convicted of or pleading guilty or nolo contendere to” various offenses: “$100 for each violation of § 50-2201.05, ... between $50 and $250 for other serious traffic or misdemeanor offenses, and ... between $100 and $5,000 for each felony offense.” D.C. Code § 4-516(a).[8] The WCCA provides that “[t]he decision of the sentencing court regarding assessments is final,” id., that “[assessments ... shall be collected as fines,” id. § 4-516(c),[9] and that “[fjailure to pay ... will subject a defendant ... to sanctions provided pursu *180 ant to § 16-706,” id. That provision states in turn that “the court may, in the event of default in the payment of the fíne imposed, commit the defendant for a term not,to exceed one,,year” ,D.C. Code § 16-706.
The WCCA assessment is a “fíne” or: “penalty” as those terms are commonly understood because it is “imposed as punishment for a crime” or is a burden “annexed by law or judicial decision to the commission of a crime.” Webster’s Third New International Dictionary 852, 1668. The WCCA assessment shares the typical characteristics of a punishment. It is necessarily imposed following conviction as part of the sentence — in this. case, it was included in the written judgment of Mr. Lopez-Ramirez’s sentence[10] — and it cannot be imposed on a person who has not been convicted of an offense. See D.C. Code § 4-516(a). The trial court has-discretion, within a range, to decide how high an assessment to impose for each conviction, and the range for more severe offenses (felonies) is higher than the range for less severe offenses (misdemeanors). See id. These considerations reflect a “punitive objective” — “making the punishment lit the crime.” Mayberry, 774 F.2d at 1021. Finally, the WCCA assessment is “collected as [a] fine[],” D.C. Code § 4-516(c), meaning, among other things, that a defendant who fails to pay it can go to jail, D.C. Code § 16-706.
• Putting aside that the WCCA assessment bears many of the standard hallmarks of a fine'or penalty (or punishment), and putting aside that we have no reason to think that the terms “fíne” and “penalty” as used in the jury-trial statute mean something different from what they mean in ordinary legal discourse, the legislative history of the WCCA of 1996 — which enacted the current version of the assessment provision, D.C. Code § 4-516 — further signals that the D.C. Council viewed the WCCA' assessment as a fine.
At the outset, the Judiciary Committee’s report on the WCCA of 1996 repeatedly reféra to the assessments as “fines.” D.C.Council, Report on Bill 11-657 at 3 (Sept. 26,1996) (noting that under the WCCA of 1981, “many judges did not consistently impose or collect the applicable fines needed to fund the” Crimé Victims Compensation Program (CVCP) (emphasis added)); id. at 8 (noting the testimony of Professor Judith Bonderman that under the WCCA of 1981, a “small portion” .of the CVCP funds came “from fines assessed by Superior Court judges" (emphasis added)); id. (noting the testimony of Dan Eddy recommending that the Council expand the funding for the CVCP by “including a broader range[ ] of offenses in the class of offenses for which judges can assess victim fines” (emphasis added)); id. at 9 (noting the testimony of Mary Lou Leary, Chief of the Superior Court Division of the U.S. Attorney’s Office, that “the fines have not been changed since the inception of the [victims’ compensation] program in 1982” (emphasis added)); id. at 11 (noting the testimony of Anne Goodson, stating that the proposed WCCA of 1996 “will assure the judiciary that the fines assessed will be dedicated exclusively to use by the [victims’] compensation program”, (emphasis added)). Although, as the majority notes, many — but not all* — of the uses of the word “fine” are in the summaries of witness testimony, ante at 173 n.4, the report’s consistent use of the term across multiple summaries in *181 dicates either that the Judiciary Committee viewed “fíne” as an accurate term to describe the “assessment” or that most (if not all) of the interested parties who testified before the Judiciary — Committee including someone representing the U.S. Attorney’s Office — viewed it as such.[11]
Other indications that the D.C. Council viewed the WCCA assessment as a fine include a resolution the Council passed during the period in which the WCCA of 1996 was before the-Judiciary Committee. That resolution — entitled “Sense of the Council on the Reestablishment of the District of Columbia Crime Victims Compensation Program of 1996,” Resolution 11-337, 43 D.C. Reg. 3225 (June 4, 1996)— referred to the WCCA assessments as “fines” and stated that “[i]n order to adequately fund the CVCP, the Council urges the Superior Court to diligently levy the maximum allowable fines on convicted criminals as required by D.C. Code § 3-414.”[12] Id. at 171 (emphasis added). Fifteen years earlier, the person who proposed the WCCA of 1981, Mayor Marion Berry, described the WCCA assessment in his cover letter to the proposed legislation as a “special fine ... to be imposed on convicted offenders.” D.C. Council, Report on Bill No. 4-361, App’x A (Dec. 16, 1981).
II. The Presumed Purpose of the Misdemeanor Streamlining Act Cannot Override the Clear Language of the Jury-Trial Statute and WCCA.
My colleagues in the majority will not give effect to the ordinary meaning of the language in the jury-trial statute and the WCCA assessment provision because, in their view, doing so would lead to a result in stark contradiction with the intent of the Misdemeanor Streamlining Act. Ante at 174. There is little doubt that the purpose of the Misdemeanor Streamlining Act was to render a large number of misdemeanor offenses non-jury-demandable, and that when the D.C. Council enacted the Misdemeanor Jury Trial Act of 2002, it did not envision that its amendment to the jury-trial statute would significantly increase the number of jury-demandable cases.[13] Ante at 173-74, 175-76. It is also true, as the majority states, that to fully give effect to the D.C. Council’s intent in enacting the Misdemeanor Streamlining Act (and its intent that the Misdemeanor Jury Trial Act not significantly expand the number of cases tried by juries), the court would have to reject Mr. Lopez-Ramirez’s interpretation of the jury-trial statute and the WCCA assessment provision and deviate > from the plain language of those statutes.
*182 The majority’s interpretation falters because it undermines the clear legislative purpose behind the jury-trial statute. As spelled out in the preceding section, the jury-trial statute reflects the judgment of the D.C. Council and Congress that defendants facing fines or monetary penalties above a certain threshold — $1,000 if charged with only a single offense but $4,000 otherwise — should receive a jury trial. The WCCA assessment fits the functional criteria for a fine or penalty, and the D.C. Council that enacted the WCCA of 1996 likely considered the WCCA assessment a fine. The majority’s interpretation deprives defendants whom the D.C. Council intended to receive jury trials that is, defendants facing fines above the statutory threshold of their jury trials.
Put another way, the statutes and legislative acts at issue in this case reflect mutually incompatible legislative goals or purposes. That leaves two choices for resolving the inconsistency. We can give effect to the purpose of the Misdemeanor Streamlining Act — but contravene the legislature’s intent that defendants facing fines above a certain threshold receive a jury trial — by pretending that the WCCA assessment is not a fine or penalty. Or we can give effect to the legislature’s intent that defendants facing fines above a certain threshold receive a jury trial — but undermine the purpose of the Misdemean- or Streamlining Act — by accepting that the WCCA assessment fits the criteria of a fine or penalty,[14] At least the latter option is consistent with the ordinary meaning of the text of the relevant statutes.[15]
III. There Is No Reason To Believe That the D.C. Council Would Favor the Majority’s Interpretation.
The majority’s analysis relies on the assumption that the D.C. Council, in enacting the various amendments to the jury-trial statute (such as the Misdemeanor Jury Trial Act of 2002), the WCCA (of 1981 and of 1996), and the Misdemeanor Streamlining Act (in 1994), was fully aware of the existence of other pertinent enactments, that it thought through completely how they would interact with each other, and that this court can divine how the Council envisioned the enactments interacting with each other. See, e.g., ante at 173 (contending that Mr. Lopez-Ramirez’s interpretation would “disrupt a statutory scheme that the Council has carefully constructed over decades”); ante at 173 (stating that the Council that passed the Misdemeanor Jury Trial Act of 2002 “would presumptively have been aware of the current WCCA assessment system ... ”); cf. *183 ante at 176 (framing the “issue presented” in this case as whether “the [D.C.] Council ... intended] that a WCCA assessment be treated as a fine or penalty for purposes of applying D.C. Code § 16-705”). The majority does not justify this assumption with any evidence in the legislative history, and no such evidence exists. Moreover, the relevant enactments were passed over a period of several decades and “their respective subject matters and purposes” — in particular, the WCCA’s purpose of creating and funding a victims’ compensation fund and the Misdemeanor Streamlining Act’s purpose of reducing the number of jury trials — “are different.” District of Columbia v. Thompson, 593 A.2d 621, 680 (D.C. 1991); see also 2B Shamble Singer, Sutherland Statutory Construction § 51:1 (7th ed.) (“[I]n the absence of some evidence that legislators were cognizant of related statutes, courts should reject both the presumption and the rule of in pari materia until after exhausting all other means to determine legislative intent”). So the majority’s central assumption is unsound.
It is not, moreover, the job of this court to resolve the conflict between the purpose of the Misdemeanor Streamlining Act and the text and purpose of the jury-trial statute. Cf. Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 237-38 (2012) (noting that the absurdity doctrine “does not include substantive errors arising from a drafter’s failure to appreciate the effect of certain provisions”). Indeed, if the D.C. Council today had to decide how to resolve the apparent inconsistency between the purpose of the Misdemeanor Streamlining Act and the jury-trial statute, the Council might take any number of approaches. It might adopt the majority’s interpretation and indicate that the WCCA assessment does not count as a “fine” or “penalty” for the purpose of the jury-trial statute. Or it might conclude, alternatively, that reducing the number of misdemeanor jury trials is no longer a priority and go on to adopt Mr. Lopez-Ramirez’s proposed interpretation. It might also solve the conflict by decreasing the fines or WCCA assessments, pushing offenses back below the jury-trial threshold. This court cannot know. The majority, by deviating from the clear language of the jury-trial statute and the WCCA assessment provision based on “mere inference or surmise or speculation” about what the Council wanted, “might well [have] defeated] true legislative intent.” Grayson v. AT & T Corp., 15 A.3d 219, 237-38 (D.C. 2011) (en banc) (brackets omitted). I respectfully dissent.

. D.C. Code § 4-516(a) (2012 Repl). All subsequent D.C. Code citations are to the 2012 Replacement set unless-otherwise noted.

. Title I of D.C., Act 10-238, 41 D.C. Reg. 2608 (1994).

. Peoples Drug Stores, Inc. v. District of Columbia, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quoting Davis v. United States, 397 A.2d 951, 956 (D.C. 1979)).

. Congress revised and codified the jury-trial statute at D.C. Code § 16-705 by enacting an Act of Dec. 23, 1963, Pub. L. No. 88-241, 77 Stat. 478, 558. But Congress had provided for a statutory right to a jury trial long before that. See Act of Mar. 3, 1891, ch. 536, § 2, 27 Stat. 848 (providing that "[i]n all prosecutions in which [defendants] would not be by force of the Constitution of the United States entitled to a trial by jury, but in which the fine or penalty may be fifty dollars or more or imprisonment for thirty days or more, the trial shall be by jury”). The jury-trial statute was most recently amended by the Misdemeanor Jury Trial Act of 2002, 49 D.C. Reg. 3439.

. The majority acknowledges that Mr. Lopez-Ramirez cited these and similar cases and correctly notes that these “decisions are not binding on us” and that they "address issues different than the one presented here.” Ante at 173 n.3. But the point in citing these cases is that they sensibly explain what a "punishment” or "penalty” is. The critical question in this case is whether the WCCA assessment is a "fine” (that is, monetaty punishment) or "penalty” as those terms are commonly understood, and these cases provide helpful guidance. The majority sets forth no alternative conception of what "fine,” "penalty,” and "punishment” mean and does not attack the cited cases’ understanding of those terms.

. Victims of Violent Crime Compensation Act of 1981, 29 D.C. Reg. 969 (Apr. 6, 1982); Victims of Violent Crime Compensation Act of 1996, 44 D.C. Reg. 1141 (Apr. 9, 1997).

. The term "assessment” is neutral and can refer to either a fine or a non-fine payment. See Black’s Law Dictionary 139 (defining "assessment” as the “[ijmposition of something, such as a tax or fine ...; the tax or fine so imposed”).

. The majority notes that the WCCA assessment is "imposed ‘[i]n addition to and separate from punishment imposed.’ ” Ante at 173 (quoting D.C. Code § 4-516(a)) (alteration in original). This language reflects the D.C. Council’s intent that the WCCA assessment be imposed as an additional cost — and that it not merge into the fine for the offense imposed pursuant to D.C. Code § 22-3571.01 or other statute. The fines of an individual convicted of a ninety-day misdemeanor could thus be up to $1,250: the $1,000 maximum set forth in D.C. Code § 22-3571.01(b)(4) plus the $250 maximum WCCA assessment. The fines would not be capped at $1,000 with $50 to $250 of that going towards the WCCA assessment.

.The majority says that "[tjhis language would be unnecessary if the Council otherwise equated ‘assessments' with ‘fines.’ ” Ante at 173. But "laws often make explicit what might already have been implicit, ‘for greater caution' and in order ‘to leave nothing to construction.' ” Young v. United Parcel Serv., Inc., - U.S. -, 135 S.Ct. 1338, 1363, 191 L.Ed.2d 279 (2015) (Scalia, J., dissenting) (quoting The Federalist No. 33, pp. 205 206 (J. Cooke ed. 1961) (A. Hamilton)); see also District of Columbia v. Jerry M., 717 A.2d 866, 871 (D.C. 1998) ("The presumption against redundancy ... ‘is only a constructionary crutch and. not a judicial ukase in the ascertainment of legislative intention.’ ” (quoting Edwards v. United States, 583 A.2d 661, 664 (D.C. 1990))).

. This appears to be regular practice. See Colter v. United States, 37 A.3d 282, 285 n.14 (D.C. 2012) (“Nor did the court err by amending its sentence to add periods of supervised release and assessments under the Victims of Violent Crime Compensation Act that were required as a matter of law.” (emphasis added)).

. The draft of the WCCA of 1996 that was attached to the Judiciary Committee’s- report referred to the assessments as “fines that judges may assess for certain offenses," D.C, Council, Report on Bill 11-657 Attachment A (emphasis added). Although this language was removed from the final version of the preamble, see ante at 173 n.4, nothing in the final version of the preamble (or anywhere' else) indicates that the Council removed the language because it rejected the characterization. See 44 D.C. Reg. 1141, The later version of the preamble appears instead to be a truncated version of the earlier version.

. D.C. Code § 3-413(c) at that time specifically said that the victim compensation fund “shall consist of,” inter alia, “costs imposed under [the assessments] section." D.C. Code § 3-413(c) (1994 Repl,).

. Even before the Misdemeanor Jury Trial Act of 2002 was. enacted, there were numerous offenses — including most of the 180-day ' offenses — that would have been jury-demaridable if the WCCA assessment had been treated as a fine. See ante at 174 n.6, 176 n.7. So to the extent a drastic increase in the number of jury-demandable cases had already occurred, the D.C. Council’s intent with respect to the Misdemeanor Jury Trial Act’s effect on that number is less significant.

. There is a third way to resolve the inconsistency. We could hold that the WCCA assessment plus any other fine imposed for an offense should be limited by the maximum fines set forth in D.C. Code § 22-3571.01(b). Under such an inteipretation, Mr. Lopez-Ramirez would not be entitled to a jury trial, and the explosion of jury trials that the majority fears would simply not happen. But this interpretation would be at odds with D.C. Code § 4-516(a), which requires that the WCCA assessment be imposed "[i]n addition to and separate from punishment imposed.” See also supra note 8.

. The rule of lenity does not apply in this case because the statutes at issue are dear: the WCCA assessment is a “fine or penalty” as those terms are normally used. See Holloway v. United States, 951 A.2d 59, 65 (D.C. 2008) (explaining that the rule of lenity is "a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt” (quoting Cullen v. United States, 886 A.2d 870, 874 (D.C. 2005))). A reasonable corollary of the rule of lenity might be that when a court is faced with legislative acts reflecting irreconcilable legislative purposes, the court gives effect to the purpose that favors the defendant over the purpose that favors the government.